IN THE UNITED STATES OF DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CRIMINAL CASE NO.      19-mj-00196-1

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SAMUEL ARCHULETA

        Defendant.

_____

**EMERGENCY MOTION FOR IMMEDIATE RELEASE AND MEMORANDUM IN SUPPORT**
_____

COMES NOW, Samuel Archuleta, by and through undersigned counsel, and respectfully moves this Court pursuant to 18 U.S.C. § 3143 and Federal Rules of Criminal Procedure 32.1 and 46 for immediate release in light of the increasingly dire COVID-19 coronavirus pandemic. The undersigned has conferred with counsel for the government, who advises that the government opposes this Motion.

**PRELIMINARY STATEMENT**

This is not an ordinary request or one counsel anticipated making, given that he was preparing to appear for Mr. Archuleta's revocation hearing currently scheduled for April 6, 2020. However, I am duty-bound to request this extraordinary relief based on the exigencies of the current situation.

Mr. Archuleta's release is warranted because the conditions of confinement at the La Plata County Detention Center are very likely to constitute a humanitarian crisis when the virus is introduced to the facility. Further, while we do not dispute the seriousness of the violations, Mr. Archuleta's few positive drug tests cannot justify his continued incarceration in light of the virus.

**ARGUMENT**

I.     **THE CONDITIONS OF CONFINEMENT AT THE LA PLATA COUNTY DETENTION CENTER ARE VERY LIKELY TO CONSTITUTE A HUMANITARIAN CRISIS WHEN THE VIRUS IS INTRODUCED TO THE FACILITY**

Mr. Archuleta faces the grim threat of coronavirus within the detention center's walls. As of March 24, 2020, the new strain of coronavirus, which causes COVID-19, has infected over 382,000 people, leading to at least 16,890 deaths worldwide.[1] On March 10, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] Governor Polis has declared a State of Emergency, closed all public schools, banned gatherings of more than 10 people, and shuttered dine-in restaurants and bars.[3]

Mr. Archuleta and his fellow inmates will be particularly vulnerable "when, not if" coronavirus comes to the La Plata County Detention Center,[4] an "incubator" for the disease[5] with "petri-like-conditions."[6] Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[7] Inmates cycle in and out of pretrial facilities from all over the state and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in detention centers.[8] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to the facilities are typically dense and crowded, they could become prime breeding grounds for the highly contagious coronavirus."); Chris Strohm, *Prisons' Coronavirus Risk Puts Justice Department Under Pressure*, BLOOMBERG (Mar. 12, 2020) (noting concerns that coronavirus outbreak "could spark riots"); Courtney Bublé, *Federal Prison Employees and Others Question BOP's Readiness for Coronavirus*, GOV. EXEC. (MAR. 11, 2020), https://www.govexec.com/management/2020/03/federal-prison-employees-participate in

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 24, 2020) available at https://nytimes/2U4kmud (updating regularly)
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[3] *Social distancing Public Health Order 20-23, Colorado Department of Public Health and Environment.*
[4] Rich Schapiro, *Coronavirus Could 'Wreak Havoc' on U.S. Jails, Experts Warn*, NBC NEWS (Mar. 12, 2020), https://www.nbcnews.com/news/us- news/coronavirus-could-wreak-havoc-u-s-jails-experts-warn-n1156586 ("We're in a very perilous stage right now," said Dr. Homer Venters, the former chief medical officer of the New York City jail system. "It's just a matter of time before we see cases inside jails and prisons.").
[5] Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar.13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about- becoming-coronavirus-incubators.
[6] P. Leila Barghouty, *U.S. Prisons Are Not Ready for Coronavirus*, THE OUTLINE (Mar. 6, 2020), https://theoutline.com/post/8770/prison-coronavirus- covid-19-outbreak?zd=1&zi=oixu2i52; *see also* Kaiser Health News, *Could Coronavirus Cause a National Prison Lockdown?*, U.S. NEWS & WORLD REPORT (Mar.  13,  2020),  at  https://www.usnews.com/news/healthiest- communities/articles/2020-03-13/could-coronavirus-cause-a-national-prison- lockdown ("Though small by comparison, the federal system sheds light on issues many state, county and local officials are grappling with now.  Because
[7] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.
[8] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

proactive measures to keep themselves safe"; "infection control is challenging in these settings."[9] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[10] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, totaling 555 cases as of three weeks ago.[11] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons."[12] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[13] And deadly prison riots have broken out in Italy over fears of the virus's spread through overcrowded facilities.[14] Because of the increased risks posed to prisoners, District Attorneys in New York and California have sought or agreed not to oppose the release of vulnerable inmates and those facing low- level charges.[15]

The 200 plus detainees at the La Plata County Detention Center face especially high risk. The majority of the individuals imprisoned there are housed in small four-man cells with a shared toilet and sink, and eat meals and have recreation with the other members of their pods. The medical care at the La Plata County Detention Center has been so bad in recent years that it has spawned investigations into medical-mal treatment of inmates.[16] These dangerous conditions exacerbate what is already a frightening and dire situation for the general population, and raise constitutional concerns of cruel and unusual punishment, especially for prisoners who are at greater risk of contracting lethal infections like the novel coronavirus due to factors such as age or pre-existing medical conditions. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)

---

[9] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[10] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, THE VERGE (Mar. 7, 2020), *at* https://bit.ly/2TNcNZY.

[11] Alice Su and Emily Baumgartner, *They Were Already in China's Prisons. Now the Coronavirus is There, Too,* LOS ANGELES TIMES (Feb. 28, 2020), at https://www.latimes.com/world-nation/story/2020-02-28/lawyers-activists-pastors-uighurs-families-of-detainees-in-china-fear-coronavirus-spread- outbreak-in-camps-and-prisons. *See also* Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, BUSINESS INSIDER (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[12] Jennifer Hansler and Kylie Atwood, *Pompeo Calls for Humanitarian Release of Wrongfully Detained Americans in Iran Amid Coronavirus Outbreak*, CNN (Mar. 10, 2020), *at* https://cnn.it/2W4OpV7.

[13] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus, The Associated Press (Mar. 7, 2020), at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[14] *Death Toll Rises from Italy's Coronavirus Prison Riots*, REUTERS (Mar. 10, 2020), at https://www.reuters.com/article/us-health-coronavirus-italy- prisons/death-toll-rises-from-italys-coronavirus-prison-riots- idUSKBN20X2DG.

[15] *CORONAVIRUS: SENTENCED TO COVID-19*, THE DAILY APPEAL (Mar. 12, 2020), at https://theappeal.org/sentenced-to-covid-19/ (reporting that Brooklyn's District Attorney has asked New York Governor Andrew Cuomo to grant emergency clemency to elderly and sick prisoners); Darwin Bond Graham, *San Francisco Officials Push to Reduce Jail Population to Prevent Coronavirus Outbreak*, THE DAILY APPEAL, at https://theappeal.org/coronavirus-san-francisco-reduce-jail-population/ (Mar. 11, 2020) (reporting that San Francisco's District Attorney has instructed prosecutors not to oppose motions for release of pre-trial detainees facing misdemeanor or drug-related felony charges unless they pose a danger to public safety).

[16] *See, e.g.,* Bret Hauf, *Tuesday Olso had organs removed years ago after untimely care behind bars.* Durango Herald (Feb. 25, 202), at https://durangoherald.com/articles/315963

3

("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." (citation and internal quotation marks omitted)).

The danger of contagion spreading throughout the jail and prison populations is so severe that the Federal Bureau of Prisons has suspended all visits—including legal visits—for 30 days.[17] Further, Colorado Governor Jared Polis issued guidance on March 24, 2020 encouraging the courts, law enforcement, prosecutors, and attorneys to work together to evaluate the detention centers' populations to determine how to reduce the number of individuals in custody where no public safety risk exists and set personal recognizance bonds as much as possible.

## II. WHILE WE DO NOT DISPUTE THE ACCURACY OF THE VIOLATIONS, MR. ARCHULETA'S FAILURE TO COMPLY WITH TESTING CANNOT JUSTIFY HIS CONTINUED INCARCERATION IN LIGHT OF THE VIRUS

Continuing to incarcerate Mr. Archuleta in "petri-like-conditions" during the COVID-19 pandemic is neither necessary nor appropriate to sanction his relatively minor technical violations, Mr. Archuleta's failure to adhere to these conditions of release cannot justify his continued incarceration in light of the virus.

It is important to put Mr. Archuleta's custody in context. He is not being held on the underlying offense of misdemeanor assault. Mr. Archuleta accepted responsibility for his actions, pleaded guilty, and served the 90 days imprisonment ordered by the Court. Mr. Archuleta was on probation for just over two months before a revocation was filed. During this time, he attempted to enroll in treatment, but was not successful in doing so.

Mr. Archuleta's violations, while serious, are "technical" in nature. *See* U.S. SENTENCING GUIDELINES Ch. 7, Pt. A(4) (2018). Mr. Archuleta already has served nearly two months his arrest on January 30, 2020, and will have served 68 days by the current date of his revocation hearing, April 6, 2020. Should his hearing be postponed, Mr. Archuleta will have served more time than is recommended by the Probation Department. .

Moreover, as counsel intends to argue and establish at the revocation hearing

- Mr. Archuleta did not have a chance to begin any meaningful treatment. As noted by probation, Mr. Archuleta is in need of inpatient treatment, however those services are not available to him in Southwest Colorado. [ECF 49, at 5]

---

[17] *Federal Bureau of Prisons COVID-19 Action Plan*, at https://www.bop.gov/resources/news/20200313_covid-19.jsp.

- At the time of his failure to test, Mr. Archuleta was without housing. He has now been in contact with his Aunt Loretta Beam who lives in Hesperus, Colorado and will allow him to reside with her.
- Mr. Archuleta has taken advantage of treatment at the jail through Axis, and has made arrangements to continue treatment once he is released.
- Even if this court were to adopt the Probation department's recommendation and sentencing him to 4 additional months with no supervised release, there is no indication that he would present a lessor danger to the community than releasing him now. In fact, the danger lies with confining him further, thereby spreading the pandemic even further.

In short, this Court should release Mr. Archuleta from custody, whether or not a global coronavirus pandemic threatens catastrophic harm to prison populations. But because the coronavirus poses grave health risks to inmate populations, the Court should release him *now*. Mr. Archuleta faces a present and immediate threat from COVID-19 every day he remains in custody. The number of confirmed COVID- 19 cases has doubled in two weeks, topping 382,600 globally and leading to 16,890 deaths.[18] When he is scheduled to appear next week assuming similar exponential growth, those numbers could be 650,000 cases and 27,000 deaths. They may be even higher due to the increased prevalence of testing. More importantly, the virus already is knocking on the door of the La Plata County Detention Center; La Plata County has already reported a case, and many more are expected as our county has not conducted widespread testing.[19] As stated above, the virus's induction into the detention center, and its rapid spread through the detainee population, is a question of "when, not if."

## CONCLUSION

Under the exigent circumstances created by the novel coronavirus and the extraordinary risk it poses to prison populations, this Court should release Mr. Archuleta immediately, pending his revocation hearing.[20]

Respectfully submitted, this the 24th day of March, 2020.

Respectfully Submitted,

*/s/ Ingrid A. Alt*

---

[18] *Supra note* 1.
[19] Liz Weber, *UPDATE: La Plata County's first COVID-19 case was tested in Cortez*. March, 23, 2020, https://durangoherald.com/articles/319107
[20] If the Court is inclined to deny this Motion, counsel respectfully requests that the Court conduct the revocation hearing as scheduled on April 6, by videoconference if necessary.

Ingrid A. Alt
Attorney for Defendant
484 Turner Drive, Suite F201
Durango, CO 81303
Telephone: 970-259-4422
FAX: 970-259-5638
ialt@gmalawyers.com
Atty. Reg. No.: 34009

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March, 2020, I served a true and correct copy of the foregoing **EMERGENCY MOTION FOR IMMEDIATE RELEASE AND MEMORANDUM IN SUPPORT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jeffrey Graves, US Attorney's Office
Jeffrey.graves@usdoj.gov

*/s/ Megan Oberholtzer*
Megan Oberholtzer
Paralegal to Ingrid A. Alt
Greenberg, McGuinness & Alt, LLC
484 Turner Drive, Suite F201
Durango, CO 81303
Telephone: 970-259-4422
FAX: 970-259-5638
Email: ob@gmalawyers.com

6